IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| MAURICE ALLISON MOORE, | ) | |
| | ) | |
| Plaintiff, | ) | 4:06cv3150 |
| | ) | |
| vs. | ) | MEMORANDUM AND ORDER |
| | ) | |
| NEBRASKA DEPARTMENT OF HEALTH AND HUMAN SERVICES, | ) ) ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court on (1) filing no. 7, the Motion to Dismiss filed by the defendant, the Nebraska Department of Health and Human Services ("HHS"); (2) filing no. 9, the Motion for Default Judgment filed by the plaintiff, Maurice Allison Moore; (3) filing no. 11, the defendant's Motion to Strike the plaintiff's Supplement (filing no. 10); and (4) filing no. 14, the defendant's Motion to Strike the plaintiff's Letter (filing no. 13).  As a preliminary matter, the defendant's Motions to Strike (filing nos. 11 and 14) are denied.  The court has reviewed the challenged documents, but because the issue raised by the defendant's Motion to Dismiss concerns the sovereign immunity of the State of Nebraska, disputed documents have no effect on the outcome of these proceedings.

HHS is an agency of the State of Nebraska.  As such, HHS shares the State's sovereign immunity under the Eleventh Amendment to the U.S. Constitution. See, e.g., <u>Nebraska Methodist Health System, Inc. v. Department of Health</u>, 543 N.W.2d 466, 469 (Neb. 1996): "Generally speaking, a suit against a state agency is a suit against the State itself."  Accord <u>County of Lancaster v. State, Dept. of Public Institutions</u>, 529 N.W.2d 791, 794 (Neb. 1995):  "For the purposes of applying the doctrine of sovereign immunity, a suit against an agency of the state is the same as a suit against the state."

The plaintiff asserts federal civil rights claims pursuant to 42 U.S.C. § 1983 against HHS, acting through its agents and employees, for interfering in the plaintiff's relationship, custody and visitation with his minor son, Taylor Moore. The plaintiff's parental interest in access to his child is a constitutionally protected liberty interest. See, e.g., Wilkinson ex rel. Wilkinson v. Russell, 182 F.3d 89, 103-04 (2d Cir. 1999), cert. denied, 528 U.S. 1155 (2000); Manzano v. South Dakota Dept. of Social Services, 60 F.3d 505, 509 (8th Cir. 1995). However, that interest is not absolute and is subject to a state's compelling governmental interest in the protection of minor children. Manzano v. South Dakota Dept. of Social Services, 60 F.3d at 509-10.

The Eleventh Amendment to the U.S. Constitution bars claims for monetary relief by private parties against a state, a state agency or an employee of a state in his or her official capacity. See, e.g., Edelman v. Jordan, 415 U.S. 651, 663 (1974) ("a suit by private parties seeking to impose a liability which must be paid from public funds in the state treasury is barred by the Eleventh Amendment."). Thus, the plaintiff's claims for monetary relief against the State of Nebraska, through HHS, must be dismissed.

Furthermore, "a State is not a 'person' as that term is used in [42 U.S.C.] § 1983, and is not suable under the statute, regardless of the forum where the suit is maintained." Hilton v. South Carolina Public Railways Com'n, 502 U.S. 197, 199-201 (1991), *citing* Will v. Michigan Dept. of State Police, 491 U.S. 58 (1989). Thus, 42 U.S.C. § 1983 does not create a cause of action against the State of Nebraska or its agencies and instrumentalities.

In his complaint, the plaintiff also protests that an employee of HHS failed to abide by HHS regulations under state law. However, there is no federal constitutional question

inherent in an alleged violation of state law by a state official.  "[A] violation of state law, without more, does not state a claim under the federal Constitution or 42 U.S.C. § 1983." Bagley v. Rogerson, 5 F.3d 325, 328 (8th Cir. 1993).  Accord Collins v. Bellinghausen, 153 F.3d 591, 596 (8th Cir. 1996).

Again, the Eleventh Amendment deprives federal courts of jurisdiction over claims to enjoin a state official from prospective violation of state law or to require a state official to conform to state law.  Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89, 104-06 (1984).  In addition, as for claims arising under state law, "[a] State's constitutional interest in immunity encompasses not merely *whether* it may be sued, but *where* it may be sued." Pennhurst, 465 U.S. at 99 (emphasis in original).  See also Becker v. University of Nebraska, 191 F.3d 904, 908 (8th Cir. 1999):  "This court has previously held that the State of Nebraska has not consented to federal court jurisdiction."  Accord Hess v. Port Authority Trans-Hudson Corp., 513 U.S. 30, 39-40 (1994):  "The Eleventh Amendment largely shields States from suit in federal court without their consent, leaving parties with claims against a State to present them, if the State permits, in the State's own tribunals." Accord Trevelen v. University of Minnesota, 73 F.3d 816, 818 (8th Cir. 1996): "The Supreme Court has interpreted the Eleventh Amendment to bar actions in federal court against a state by its citizens."

Finally, the complaint refers to the Americans with Disabilities Act ("ADA"),[1] although

---

[1] Title I of the Americans with Disabilities Act ("ADA") prohibits employment discrimination against the disabled, 42 U.S.C. § 12112. Title II forbids discrimination against the disabled in services and programs offered by public entities, 42 U.S.C. § 12132.  Title III bans such discrimination in public accommodations engaged in interstate commerce, 42 U.S.C. §§ 12182 *et seq*.  This case appears to involve Title II.

3

the actual application of the ADA to the plaintiff's dispute with HHS is not clear. Nevertheless, Title II of the ADA prohibits public entities from denying the benefits of services, programs and activities to a "qualified individual with a disability" on account of the individual's disability. "Although Title II broadly prohibits discrimination on the basis of disability by public entities ... it provides very little guidance by way of defining exactly what constitutes 'discrimination' within the meaning of the statute." Hahn ex rel. Barta v. Linn County, IA, 130 F. Supp.2d 1036, 1045 (N.D. Iowa 2001). To state a prima facie claim under the ADA, a plaintiff must show: "(1) that he is a person with a disability as defined by statute; (2) he is otherwise qualified for the benefit in question; and (3) that he was excluded from the benefit due to discrimination based upon disability." Randolph v. Rodgers, 170 F.3d 850, 858 (8th Cir. 1999).

However, the ultimate guarantee of the Eleventh Amendment is that nonconsenting states may not be sued by private individuals in federal court, including under Title II of the ADA. Board of Trustees of Univ. of Alabama v. Garrett, 531 U.S. 356, 363 (2001). While Congress may abrogate the states' Eleventh Amendment immunity, Congress exceeded its authority under § 5 of the Fourteenth Amendment in attempting to abrogate Eleventh Amendment immunity under Title II of the ADA.

The Supreme Court has recognized an exception to that principle in Tennessee v. Lane, 541 U.S. 509 (2004) (denial of access to the courts). However, this case does not involve the kinds of judicial services at issue in Tennessee v. Lane. Also, in United States v. Georgia, 546 U.S. 151 (2006), the Supreme Court held that a disabled inmate in a state prison may sue the state for money damages under Title II of the ADA when the alleged deliberate refusal of prison officials to accommodate the plaintiff's disability-related needs

in such fundamentals as mobility, hygiene, medical care, and virtually all other prison programs also independently violated the Fourteenth Amendment. However, the plaintiff does not allege claims which fall within the exception to state sovereign immunity discussed in <u>United States v. Georgia</u>.

In addition, even if the plaintiff could somehow overcome the obstacle of state sovereign immunity in this court, he would be precluded from proceeding with this case in federal court by the "domestic relations doctrine" articulated in <u>Ankenbrandt v. Richards</u>, 504 U.S. 689 (1992). In <u>Ankenbrandt</u>, the U.S. Supreme Court recognized a "domestic relations exception" to the jurisdiction of the federal courts in light of long-held understandings and policy considerations. "The [domestic relations] limitation is one on subject matter jurisdiction, and is therefore not waivable by the parties. The aim of the exception is to keep federal courts from meddling in a realm that is peculiarly delicate, that is governed by state law and institutions (e.g., family courts), and in which inter-court conflicts in policy or decrees should be kept to an absolute minimum." <u>Dunn v. Cometa</u>, 238 F.3d 38, 41 (1st Cir. 2001). See also <u>Elk Grove Unified School Dist. v. Newdow</u>, 542 U.S. 1, 12-13 (2004):

> One of the principal areas in which this Court has customarily declined to intervene is the realm of domestic relations. Long ago we observed that "[t]he whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the States and not to the laws of the United States." <u>In re Burrus</u>, 136 U.S. 586, 593-594 ... (1890). See also <u>Mansell v. Mansell</u>, 490 U.S. 581, 587... (1989) ("[D]omestic relations are preeminently matters of state law"); <u>Moore v. Sims</u>, 442 U.S. 415, 435 ... (1979) ("Family relations are a traditional area of state concern"). So strong is our deference to state law in this area that we have recognized a "domestic relations exception" that "divests the federal courts of power to issue divorce, alimony, and child custody decrees." <u>Ankenbrandt v. Richards</u>, 504 U.S. 689, 703 ... (1992). We have also acknowledged that it might be appropriate for the federal courts to decline to hear a case involving "elements of the domestic

5

relationship," id., at 705 ..., even when divorce, alimony, or child custody is not strictly at issue ....

Accordingly, for all of the foregoing reasons, this case must be dismissed. Therefore, filing no. 7, the Motion to Dismiss filed by HHS will be granted. The record demonstrates no reason why the defendant, HHS, could be considered in default, and, thus, filing no. 9, the plaintiff's Motion for Default Judgment, is denied.

THEREFORE, IT IS ORDERED:

1. That filing no. 7, the defendant's Motion to Dismiss, is granted;

2. That filing no. 9, the plaintiff's Motion for Default Judgment, is denied;

3. That filing nos. 11 and 14, the defendant's Motions to Strike, are denied;

4. That this case and the plaintiff's complaint are dismissed without prejudice;

5. That judgment will be entered accordingly.

DATED this 14th day of May, 2007.

BY THE COURT:

s/ Joseph F. Bataillon
JOSEPH F. BATAILLON
Chief District Judge